1  J. Noah Hagey, Esq. (CA SBN: 262331)
       hagey@braunhagey.com
2  Matthew Borden, Esq. (CA SBN: 214323)
       borden@braunhagey.com
3  BRAUNHAGEY & BORDEN LLP
   220 Sansome Street, Second Floor
4  San Francisco, CA 94104
   Telephone: (415) 599-0210
5  Facsimile: (415) 276-1808

6  ATTORNEYS FOR DEFENDANT
   ROBERT'S AMERICAN GOURMET FOOD, LLC
7

8

9             UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11            WESTERN DIVISION – LOS ANGELES

12

13  NICOLLE DISIMONE, on behalf of herself and )   Case No. 13-CV-05493-GAF (FFM)
    all others similarly situated,              )
14                                               )
              Plaintiff,                         )   **DEFENDANT ROBERT'S AMERICAN**
15                                               )   **GOURMET FOOD, LLC'S NOTICE OF**
         v.                                      )   **MOTION AND MOTION FOR**
16                                               )   **TRANSFER TO THE EASTERN**
    ROBERT'S AMERICAN GOURMET FOOD,               )   **DISTRICT OF NEW YORK;**
17  LLC, a Delaware limited liability company dba)   **MEMORANDUM OF POINTS AND**
    PIRATE BRANDS,                                )   **AUTHORITIES IN SUPPORT**
18                                               )   **THEREOF**
              Defendant.                         )
19  _____ )
                                                     Date:    September 23, 2013
20                                                   Time:    9:30 a.m.
                                                     Dep't:   740
21                                                   Before:  Hon. Gary A. Feess

22                                                   Complaint Filed: July 30, 2013
                                                     Trial Date:      None
23

24

25

26

27

28
                                                     Case No. 13-CV-05493-GAF (FFM)
   DEFENDANT ROBERT'S AMERICAN GOURMET FOOD, LLC'S NOTICE OF MOTION AND MOTION FOR
                TRANSFER TO THE EASTERN DISTRICT OF NEW YORK

## NOTICE OF MOTION AND MOTION

TO EACH PARTY AND TO COUNSEL OF RECORD FOR EACH PARTY:

YOU ARE HEREBY NOTIFIED THAT on September 23, 2013, at 9:30 a.m., in the United States District Court, Central District of California, Western Division, located at 312 North Spring Street, Los Angeles, California 90012, in courtroom 740, before the Honorable Gary A. Feess, Defendant Robert's American Gourmet Food, LLC will, and hereby does move, to transfer the Complaint of Plaintiff Nicolle DiSimone to the Eastern District of New York pursuant to the first-to-file rule or, alternatively, 28 U.S.C. section 1404(a), on the grounds that two related actions are currently pending in the Eastern District of New York involving substantially the same facts and claims

This motion will be made pursuant to the first-to-file rule and 28 U.S.C. section 1404(a) on the grounds that this duplicative, cut-and-pasted complaint should be transferred to the Eastern District of New York—where Defendant is headquartered and where two prior putative class actions against it are now pending, and where a third class action, pending in the Southern District of Florida is also likely to be transferred. Counsel has made a reasonable and good faith effort to informally resolve the issues presented by this motion.

The motion will be based upon this notice and memorandum in support, the Declaration of J. Noah Hagey filed concurrently, and the files and records in this action and any further evidence and argument that the Court may receive at or before the hearing.

Dated: August 23, 2013

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By: /s_____
       J. Noah Hagey

Attorneys for Defendant
Robert's American Gourmet Food, LLC

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 3

    A.    The First-Filed Lawsuit in New York ................................................................. 3

    B.    The *Hill* Lawsuit and Subsequent Transfer ........................................................ 3

    C.    Plaintiff Files this Duplicative Putative Class Action ......................................... 4

    D.    A&W's Role in Coordinating the Vexatious Filings of This and Other Cases ...... 6

    E.    Defendant Attempts to Meet and Confer Regarding Transfer .............................. 7

ARGUMENT .............................................................................................................................. 7

I.    TRANSFER TO THE EASTERN DISTRICT OF NEW YORK IS WARRANTED UNDER THE FIRST-FILED RULE ........................................................ 8

II.    TRANSFER UNDER 28 U.S.C. § 1404 IS ALSO WARRANTED ................................ 11

    A.    This Action Could Have Been Brought in the Eastern District of New York ...... 11

    B.    The Convenience of the Parties and Witnesses and the Interests of Justice Weigh in Favor of Transfer .................................................................................. 12

CONCLUSION .......................................................................................................................... 15

## TABLE OF AUTHORITIES

**CASES**

*A.J. Industries, Inc. v. U.S. Dist. Court for Central Dist. of California*, 503 F.2d 384 (9th Cir. 1974) ............................................................................................................................................ 13

*Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622 (9th Cir. 1991) ............................................ 8

*Barapind v. Reno*, 225 F.3d 1100 (9th Cir. 2000) ............................................................................ 8

*Cluck v. IKON Office Solutions, Inc.*, No. C 11-5027 JSW, 2012 WL 1610789 (N.D. Cal. May 8, 2012) ............................................................................................................. 9

*George v. Nat'l Collegiate Athletic Ass'n*, C 08-03401 GAF, 2008 WL5422882 (S.D. Cal. Dec. 17, 2008) ........................................................................................................ 12

*In re Yahoo! Inc.*, 2008 WL 707405 (C.D. Cal. Mar. 10, 2008) ..................................................... 12

*Johansson v. Central Garden & Pet Co.*, No. C 10-3771 MEJ, 2010 WL 4977725 (N.D. Cal. Dec. 2, 2010) .............................................................................................................. 9

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ..................................................... 12

*Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982) .............................................. 8

*Papaleo v. Cingular Wireless Corp.*, No. C 07-1234 MMC, 2007 WL 1238713 (N.D. Cal. April 26, 2007) .......................................................................................................... 9

*Ruff v. Del Monte Corp.*, No. C 12-5251 JSW, 2013 WL 1435253 (N.D. Cal. Apr. 9, 2013) ....... 8, 9

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ............................................................. 7, 14

**STATUTES**

28 U.S.C. § 1332 ........................................................................................................................ 9, 11

28 U.S.C. § 1391 ............................................................................................................................ 12

28 U.S.C. § 1404 ..................................................................................................................... 1, 7, 15

28 U.S.C. § 1927 .............................................................................................................................. 2

**OTHER AUTHORITIES**

S. Rep. No. 109-14 (2005) .............................................................................................................. 9

**RULES**

Fed. R. Civ. Proc. 42 ..................................................................................................................... 13

Local Rule 7-3 ................................................................................................................................. 7

Defendant Robert's American Gourmet Food, LLC ("Defendant") respectfully submits this memorandum of law in support of its motion to transfer venue to the Eastern District of New York, where an earlier, first-filed putative class action against the same Defendant has been pending since December 2012.

**INTRODUCTION**

Defendant moves under the first-filed rule and 28 U.S.C. section 1404(a) to transfer this duplicative, cut-and-pasted complaint to the Eastern District of New York—where Defendant is headquartered and where two prior putative class actions against it are now pending. *See Valasquez v. Robert's American Gourmet Food, LLC*, Case No. 12-cv-6307 (E.D.N.Y. Dec. 21, 2012) (the "First-Filed Lawsuit") and *Hill v. Robert's American Gourmet Food, LLC, et al.*, Case No. 13-cv-4239 (E.D.N.Y. Feb. 15, 2013) ("*Hill*"). The complaint in *Hill* is almost indistinguishable from the present action, and was also filed outside of New York long after the First-Filed Lawsuit. In July 2013, in order to preserve judicial and party economy and to prevent inconsistent judgments, *Hill* was transferred from the Northern District of California to the Eastern District of New York under the first-filed rule. A copy of the Honorable Yvonne Gonzales Rogers's July 10, 2013 Transfer Order, 2013 WL 3476801 (N.D. Cal.), is appended as Exhibit 1 (hereafter, "Transfer Order") to the accompanying declaration of J. Noah Hagey, Esq. ("Hagey Decl.").

Within a few days of Judge Gonzales Rogers's Transfer Order, this case was filed in the Central District of California together with several other carbon-copy filings in Florida, Washington and New Jersey. *See Ruffino v. Robert's American Gourmet Food, LLC*, Case No. 13-cv-61524 (S.D. Fla. July 15, 2013) ("*Ruffino*"); *Molinarolo v. Robert's American Gourmet Food, LLC*, Case No. 13-cv-01237 (W.D. Wash. July 16, 2013) ("*Molinarolo*"); and *Goldberg v. Robert's American Gourmet Food, LLC*, Case No. 13-cv-04597 (D.N.J. July 30, 2013) ("*Goldberg*").[1]

---

[1] As explained below, after the *Hill* case was transferred to New York, counsel in that case, Ahdoot & Wolfson, PC ("A&W"), orchestrated the filing of four duplicate complaints against Defendant around the country, in New Jersey, Washington, Florida and California. The cases are carbon copies of the *Hill* action. In each case, A&W either has pre-existing and ongoing relationships with local counsel or has previously represented the same alleged plaintiff in a prior matter. Defendant is in the process of moving to have all of these cases transferred and

1    Case No. 13-CV-05493-GAF (FFM)

Like *Hill* and the First-Filed Lawsuit, the new complaints asserted that consumers were somehow tricked into buying Defendant's Pirate's Booty brand products because they thought the word "natural" on the label guaranteed that the products were free of genetically modified ("GM") ingredients—even though consumers admit they have no common understanding of the term, and the FDA's scientific reports show that GM and non-GM products are identical and no differentiation in labeling is warranted or, for that matter, allowed. *See* U.S. Food and Drug Administration ("FDA"), Guidance for the Industry: Voluntary Labeling Indicating Whether Foods Have or Have Not Been Developed Using Bioengineering (January 2001). Each complaint is subject to the FDA's primary jurisdiction and otherwise fails to state any claim for relief, *e.g.*, by failing to adequately allege reliance under Rule 9(b) in light of California voters' well-publicized rejection of GM labeling regulations for "natural" products.

Regardless of merits, however, it does not make sense to conduct four or more parallel and duplicative class action proceedings against the same Defendant on the same issues and facts. Such waste of judicial and party resources, and the threat of inconsistent judgments, is why the Court in *Hill* ordered the case transferred to the Eastern District of New York:

> **A transfer of this case to the Eastern District of New York will serve the purpose of the first-to-file rule in promoting judicial efficiency and avoiding the possibility of conflicting judgments.** Each of the claims in the instant action is mirrored or contained within the *Valasquez* Action. The same allegedly mislabeled Products are at issue in both actions, although Hill identifies more Products than in the *Valasquez* Action. The class periods in the actions overlap significantly: December 21, 2008 to the conclusion of the action versus February 15, 2009 to the date that notice will be disseminated to the class. Because of the overlapping claims, Products, and class period, discovery in the actions will be duplicative. Significant judicial efficiency will be gained and conservation of resources achieved by having one court manage the discovery in both actions, particularly where the primary defendant is located in New York. Moreover, both actions are nearing the motion to dismiss stage. In *Hill*, a motion to dismiss has been filed. In the *Valasquez* Action, leave has been granted to file a motion to dismiss. Transfer to the Eastern District of New York is thus unlikely to significantly hinder the progress of either case.

consolidated in the Eastern District of New York, where it will further address plaintiffs' and their counsel's effort to "vexatiously" multiply the litigation. *See* 28 U.S.C. § 1927.

(Transfer Order at *5) (emphasis added).

All of these reasons and analysis apply with equal force here. Defendant accordingly respectfully requests that the Court grant transfer of the complaint to the Eastern District of New York where it can be consolidated with the prior-filed actions.

## FACTUAL BACKGROUND

### A. The First-Filed Lawsuit in New York

On December 21, 2012, two plaintiffs filed the First-Filed Lawsuit as a putative national and California class action in the Eastern District of New York. (Hagey Decl. ¶ 3.) An amended complaint was later filed on February 20, 2013, and the case is now pending before the Honorable Sandra L. Townes in the Eastern District of New York. (Hagey Decl. Ex. 2.)

In the First-Filed Lawsuit, plaintiffs allege they were supposedly misled by Defendant's description of its products as "natural" because the products include GM ingredients. (*Id.* at ¶ 3.) They assert claims under the California Consumer Legal Remedies Act ("CLRA"), the California Unfair Competition Law ("UCL"), the California False Advertising Law ("FAL"), claims for breach of warranty, and a salmagundi of other legal theories. (*Id.* at ¶¶ 49–119 (First through Tenth Causes of Action).) On May 6, 2013, Defendant filed a motion to dismiss under Rule 12(b), which is presently pending. (Hagey Decl. ¶ 4.) Discovery has not begun, pending consolidation of the other cases and determination of Defendant's motion. (*Id.*)

### B. The *Hill* Lawsuit and Subsequent Transfer

On February 15, 2013, the *Hill* lawsuit was filed. (Hagey Decl. ¶ 5, Ex. 3.) It asserted identical claims under the CLRA, UCL and FAL, as well as claims related to several ingredients in the products, which allegedly could not be classified as "natural." (*Id.*)

On May 21, 2013, over plaintiff's and his counsel's objections, Defendant moved to transfer *Hill* to the Eastern District of New York. (Hagey Decl. ¶ 2.) Three days later, on May 24, 2013, Hill's counsel at A&W attempted to frustrate transfer by amending the complaint to name one of Defendant's alleged investors, a California-based third party. (*Id.*)

On July 10, 2013, Judge Rogers granted Defendant's transfer motion. (Transfer Order at *5.) In the Order, Judge Rogers held that there was "substantial similarity between the actions" warranting transfer to New York:

> Each of the claims in the instant action is mirrored or contained within the *Valasquez* Action. The same allegedly mislabeled Products are at issue in both actions, although Hill identifies more Products than in the *Valasquez* Action. The class periods in the actions overlap significantly: December 21, 2008 to the conclusion of the action versus February 15, 2009 to the date that notice will be disseminated to the class. Because of the overlapping claims, Products, and class period, discovery in the actions will be duplicative. Significant judicial efficiency will be gained and conservation of resources achieved by having one court manage the discovery in both actions, particularly where the primary defendant is located in New York.

(Transfer Order at *4–5.)

The Court rejected plaintiff's counter arguments regarding differences in some of the allegations and parties, holding that:

> [T]he slight variations in the allegations [are] inconsequential because the central issues are the same. Even though there may be varying allegations, counsel articulated no reason why the district court in New York could not adequately address those issues. In addition, Hill failed to show that the discovery in the cases would be substantially different, nor did he present a reason outweighing the judicial efficiency to be gained by transferring this action to New York.

(*Id.*) Ultimately, the Court concluded that "the central question in both cases is the same," thus warranting transfer. (*Id.*)

Tellingly, within minutes of Judge Rogers's decision, A&W requested to voluntarily dismiss their claims against the alleged third-party investor. (Hagey Decl. ¶ 6, Ex. 4 (email requesting dismissal of third party).)

### C.  Plaintiff Files this Duplicative Putative Class Action

Less than three weeks after *Hill* was transferred, and more than eight *months* after the original First-Filed Lawsuit was brought, Plaintiff Nicolle DiSimone filed the instant action. It appears to be part of a coordinated plan by A&W in *Hill* to gain leverage in lead counsel

negotiations and/or to create the false impression of need for a multi-district litigation assignment.[2] A&W thus coordinated the filing of cases in Florida, New Jersey, California, and Washington, thereby multiplying the disputes against Defendant to five different states in order to harass the company and generate leverage in the aforementioned lead counsel struggle.

The allegations in Ms. DiSimone's complaint are cut and pasted from those in *Hill*, as are the allegations in the other newly filed complaints. Plaintiff claims she was somehow misled by Defendant's description of its products as "natural" because the products include GM ingredients. (Compl. ¶¶ 11–30.) She uses the same verbiage as *Hill* to describe background, parties and allegations, and in the same sequence and structure. (*Compare* Hagey Decl. Ex. 3 (*Hill* First Amd. Compl.) at ¶¶ 1–37, *with DiSimone* Compl. ¶¶ 1–30.) For example, it seems uncanny that both plaintiffs find "irony" in Defendant's alleged "heavy processing"; much more, they do so in the *exact* same paragraph of each complaint—Paragraph 3. (*Compare* Hagey Decl. Ex. 3 (*Hill* First Amd. Compl.) at ¶ 3 ("**Ironically**, the GM attributes of the ingredients persist despite this heavy processing because the changes are chemical, and not genetic."), *with DiSimone* Compl. ¶ 3 ("**Ironically**, the GM attributes of the ingredients persist despite this heavy processing because the changes are chemical, and not genetic.")) (emphasis added to both). Other factual allegations appear verbatim as well. (*Compare* Hagey Decl. Ex. 3 (*Hill* First Amd. Compl.) at ¶ 14 ("The 'all natural' message is **inherently intertwined** with the Pirate Brands' definition and recognition."), *with DiSimone* Compl. ¶ 11 ("The 'all natural' message is **inherently intertwined** with the Pirate Brands' definition and recognition.")) (emphasis added to both).

Similarly, both plaintiffs cite the *exact* same passage from a World Health Organization report, and do so again in the *exact* same paragraph. (*Compare* Hagey Decl. Ex. 3 (*Hill* First Amd. Compl.) at ¶ 2 ("The World Health Organization defines GM organisms (which include crops) as

---

[2] Indeed, as this motion was to be filed, and without meeting and conferring, the plaintiffs in *Ruffino*, as predicted, filed a motion before the panel on multi-district litigation to have the MDL proceeding be transferred to the Southern District of Florida. They did so despite the long pendency of the First-Filed case in the Eastern District of New York, despite Judge Gonzales Rogers's prior transfer of a prior duplicative case to the Eastern District of New York, and despite the absence of any real connection to Florida, other than plaintiff's cut-and-pasted, vexatious filing in that district. (Hagey Decl. ¶ 13.)

'organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally.' "), *with DiSimone* Compl. ¶ 2 ("The World Health Organization defines GM organisms (which include crops) as '**organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally.**' ")) (emphasis added to both).

### D. A&W's Role in Coordinating the Vexatious Filings of This and Other Cases

The overlapping relationship between A&W and the plaintiffs or plaintiffs' counsel in the newly filed cases evidence an intent to drive up litigation costs by improperly filing coordinated complaints against Defendant. These facts are essentially indisputable: All of the cases were filed within a week of one another shortly after the Transfer Order. (Hagey Decl. ¶ 7, Exs. 5–7.) Aside from state-specific claims, each complaint further contains identical language to describe the background, parties and facts, in the same structure. And, each case involves overlapping relationships between A&W and local counsel and/or the named plaintiff.

This action was filed in the Central District of California at the same time as *Goldberg*. (Hagey Decl. ¶ 7, Ex. 7.) Just like the other cases, Ms. DiSimone's allegations are identical to those in the *Hill* complaint, edited only with respect to the plaintiff's name. (*Id.*) As in the other duplicative lawsuits, the *DiSimone* counsel frequently work with A&W on consumer class actions matters, including a similar GM food labeling suit, *Pappas .v. Naked Juice of Glendora, Inc.* (Hagey Decl. ¶ 11, Ex. 13.)

*Molinarolo* was filed in Washington six days after the Transfer Order. Ms. Molinarolo is a class representative client of A&W in a different false advertising case against the New Balance shoe company pending in Massachusetts, styled *Pashamova v. New Balance Athletic Shoe, Inc., et al*, Case No. 11-cv-10001-LTS, 11-cv-10632 (D. Mass. Jan. 3, 2011) and related case, *Carey v. New Balance Athletic Shoe, Inc., et al*, Case No. 11-cv-10632 (D. Mass. Jan. 5, 2011). (Hagey Decl. Exs. 10 and 11.) Just like this action (and *Goldberg*), Ms. Molinarolo's complaint mimics the *Hill* complaint nearly word-for-word, including to the date on which the plaintiff supposedly accessed the Pirate Brands website. (Hagey Decl. Ex. 5 at ¶ 17.) At least one member of the *Molinarolo* counsel, Beth Terrell, is Facebook friends with Robert Ahdoot, a named partner at A&W. (Hagey Decl. ¶ 10, Ex. 12.)

Ms. Ruffino's counsel in the *Ruffino* action and A&W are jointly representing numerous plaintiffs in a different case pending in the Southern District of New York, *In re: Facebook, Inc., IPO Securities and Derivative Litigation*, Case No. 12-md-2389 (S.D.N.Y.). (Hagey Decl. Ex. 8.) They also are co-counsel on another labeling case in California, *Daul v. Lancome Luxury Prods, LLC, et al*, Case No. 13-cv-03959 (C.D. Cal. June 3, 2013), jointly filed less than six weeks before this case was initiated. (Hagey Decl. Ex. 9 at 21.)

In the *Goldberg* action in New Jersey, plaintiff filed his case on July 30, 2013, twenty days after Judge Rogers's Transfer Order. He is represented by Shepherd, Finkelman, Miller & Shah, LLP, the same counsel representing Ms. Ruffino in *Ruffino*. Like Ms. Ruffino, plaintiff Goldberg also alleges he accessed the Pirate Brands website on February 13, 2013, coincidentally just two days before *Hill* was filed by A&W in California. (Hagey Decl. Ex. 7 at 16.)

### E. Defendant Attempts to Meet and Confer Regarding Transfer

Defendant's undersigned counsel attempted to meet and confer with Plaintiff's counsel about transferring this action to the Eastern District of New York. (Hagey Decl. ¶ 12, Ex. 14.) On August 16, 2013, in compliance with Local Rule 7-3, counsel notified Plaintiff of its intent to transfer this action. (*Id.*) The letter enclosed a copy of the Transfer Order and summarized that which is explained above, *i.e.*, that the complaints are cut-and-paste copies of each other, and that plaintiffs' counsels' relationship in all of the actions appeared suspect. (*Id.*) The letter solicited Plaintiff's consent to transfer. (*Id.*) Plaintiff refused to stipulate to the transfer. (*Id.*)

## ARGUMENT

Pursuant to the first-filed rule and 28 U.S.C. § 1404(a), a district court may transfer a civil action to any district where the case could have been filed initially for the convenience of the parties and witnesses, and in the interest of justice. "District courts have the discretion to adjudicate motions for transfer according to an 'individualized, case-by-case consideration for convenience and fairness.' " *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).) Here, both the first-filed rule and section 1404 strongly favor transfer to the Eastern District of New York.

I. **TRANSFER TO THE EASTERN DISTRICT OF NEW YORK IS WARRANTED UNDER THE FIRST-FILED RULE**

The first-filed rule is designed to eliminate duplicative actions, inconsistent results, and to spare parties the burden of litigating duplicative claims in multiple fora. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). "The first-to-file rule was developed to 'serve[] the purpose of promoting efficiency well and should not be disregarded lightly'" *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (citation omitted).[3] The Ninth Circuit has noted that "the general principle is to avoid duplicative litigation, and to promote judicial efficiency." *Barapind v. Reno*, 225 F.3d 1100, 1109 (9th Cir. 2000) (internal quotations and citations omitted).

Under the long-standing first-filed rule, Ms. DiSimone's duplicative action should be transferred to the Eastern District of New York where the First-Filed Lawsuit's claims involving the same putative class and Defendant are already pending, and where Defendant's witnesses and evidence are located. *See, e.g., Ruff v. Del Monte Corp.*, No. C 12-5251 JSW, 2013 WL 1435253, at *2–4 (N.D. Cal. Apr. 9, 2013) (transferring duplicative putative class action to Pennsylvania where first-filed case was venued).

Such transfer at this time, before Plaintiff has even served the complaint, will avoid potentially inconsistent results involving the same putative class, streamline case management and discovery, conserve party, witness and judicial resources, and prevent the proliferation of additional duplicative litigation.

These prudential concerns have long been held persuasive in similar circumstances involving later-filed class cases. For example, in *Ruff*, Judge White transferred a putative consumer class action to the Eastern District of Pennsylvania under the first-filed rule because a similar lawsuit, involving similar claims and the same defendant, had been filed there first, noting that "the potential for conflicting rulings, duplicative discovery, and the potential costs to

---

[3] There are a few narrow exceptions to this general principle: "The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping." *Alltrade*, 946 F.2d at 628. None of the exceptions apply namely because such circumstances usually involve a plaintiff's bad faith, bringing a suit anticipatorily, or forum shopping. The exceptions simply have little application to a Defendant, who neither chooses where or when to bring suit or maintain suit.

the parties and to potential witnesses" militated in favor of transfer. *Id.* at *4. The present action presents an even more compelling transfer than *Ruff* because in *Ruff* the defendant was headquartered in the Northern District of California. Here, Defendant is headquartered in New York, and the vast majority of witnesses and documents are already there. (Hagey Decl. ¶ 14.) In short, there is literally no reason why this duplicative case should proceed simultaneously with or in a separate court from the First-Filed Lawsuit in New York.

Under identical circumstances, courts have applied the first-filed rule to transfer putative class actions to the district where a similar first-filed case is pending. *See, e.g., Ruff*, 2013 WL 1435253, at *3–4 (N.D. Cal. Apr. 9, 2013) (transferring putative class action from the Northern District of California to the Western District of Pennsylvania); *Cluck v. IKON Office Solutions, Inc.*, No. C 11-5027 JSW, 2012 WL 1610789, at *3 (N.D. Cal. May 8, 2012) (transferring class action from the Northern District of California to this district); *Johansson v. Central Garden & Pet Co.*, No. C 10-3771 MEJ, 2010 WL 4977725, at *2 (N.D. Cal. Dec. 2, 2010) (transferring class action from the Northern District of California to the District of New Jersey); *Papaleo v. Cingular Wireless Corp.*, No. C 07-1234 MMC, 2007 WL 1238713, at *2 (N.D. Cal. April 26, 2007) (transferring class action to the Western District of Washington from the Northern District of California).[4]

As explained in the Transfer Order, all of the grounds for discretionary transfer exist in this case. *First*, the First-Filed Lawsuit was filed almost eight months ago, long before this suit. (*Compare* Hagey Decl. Ex. 2 (*Valasquez* complaint) *with* Dkt. No. 1.) This factor weighs in favor of observing the first-filed rule. The Honorable Yvonne Gonzales Rogers noted the same with regard to the *Hill* lawsuit in the Transfer Order. (Transfer Order at *3 ("[T]he *Valasquez* Action was filed on December 21, 2012 in the Eastern District of New York. Hill filed the current suit

---

[4] Discretionary transfer also comports with the congressional intent behind the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). As stated in the Senate Report, a primary goal of CAFA was to "make[] it harder for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction," and to "create[] efficiencies in the judicial system by allowing overlapping and 'copycat' cases to be consolidated in a single federal court." S. Rep. No. 109-14, at 5 (2005). Enabling the federal courts to manage duplicative, copycat putative class actions, such as the instant case, is exactly what CAFA was seeking to accomplish.

eight weeks later on February 15, 2013. Thus, the first factor regarding the chronology of actions is satisfied.").)

*Second*, the similarity of the parties, weighs in favor of transfer. Both complaints are being litigated as class actions. In holding that exact identity was not required, Judge Gonzales Rogers found:

> Robert's is the sole defendant in the *Valasquez* Action, whereas the Amended Complaint in this action names two defendants, Robert's and VMG Partners II, LLC. The fact that there is an additional defendant in this case does not negate the *substantial similarity* between the actions.

(*Id.* at *4) (emphasis in original). The Court went on to note:

> With respect to the putative classes, plaintiffs in the *Valasquez* Action seek to represent both a nationwide class and a sub-class of California consumers. In the present action, Hill seeks to represent only himself and a class of California consumers. Courts have held that proposed classes in class action lawsuits are substantially similar where both classes seek to represent at least some of the same individuals. [citation]. Although plaintiffs in the *Valasquez* Action seek to represent a larger and broader class, plaintiffs in both that action and the present action intend to represent at least a California class of consumers. Thus, there is substantial similarity between the parties involved in both cases, and the second requirement of the first-to-file rule is satisfied.

(*Id.*) The same is true here. Like the *Hill* complaint, Ms. DiSimone's complaint seeks to represent a California class of some of the same individuals in the First-Filed Lawsuit. (Compl. ¶ 31.)

*Finally*, both complaints assert, in substance, identical claims. As Judge Gonzales Rogers held in her Transfer Order: there is "*substantial similarity*" between the actions." (Transfer Order at *4) (emphasis in original). She noted that there was "substantial similarity between the parties involved in both cases," that the claims in *Hill* are "mirrored in the *Valasquez* Action" and that "the central question in both cases is the same." (*Id.* at *5.) It is immaterial that Plaintiff's complaint here may assert state law claims that are not mirrored in the other action. As noted in the Transfer Order, the fact that certain claims were premised on differing state laws, "both actions implicate the same factual issues . . . whether the use of the 'all natural' label on Pirate Brands products is deceptive and misleading because the products are, in fact, unnatural." (*Id.* at *5.) Similarly,

the *Valasquez* case seeks to represent a California sub-class, and the *Hill* complaint has already been transferred, which also seeks to represent a California class. (*Id.* at *4.)

Moreover, the complaint here is substantially similar to the complaint in the First-Filed Lawsuit. Each complaint asserts claims on behalf of California classes who purchased Defendant's products. (*Compare* Hagey Decl. Ex. 2 at ¶¶ 1–8 (*Valasquez* complaint) *with DiSimone* Compl. at ¶¶ 1–5.) Both actions name one defendant, Robert's American. (*Compare* Hagey Decl. Ex. 2 at ¶ 13 (*Valasquez* complaint) *with DiSimone* Compl. at ¶ 10.) Both complaints allege harms premised on the use of the phrase "all natural." (*Compare* Hagey Decl. Ex. 2 at ¶¶ 2–3 (*Valasquez* complaint) *with DiSimone* Compl. at ¶¶ 1, 4.) Each complaint bears substantial overlap with regard to the specific products at issue. (*Compare* Hagey Decl. Ex. 2 at ¶ 1 (*Valasquez* complaint) *with DiSimone* Compl. at ¶ 1.) Each complaint cites Defendant's website. (*Compare* Hagey Decl. Ex. 2 at ¶ 17 (*Valasquez* complaint) *with DiSimone* Compl. at ¶¶ 14–16.) Finally, the complaints all seek similar relief: injunctive and monetary relief. (*Compare* Hagey Decl. Ex. 2 Claims for Relief (*Valasquez* complaint) *with DiSimone* Compl. Claims for Relief.)

No credible argument can be made that the actions are not substantially similar. Thus, there is simply no reason Plaintiff's interests cannot be litigated in New York, under a nationwide class, under a consolidated action, including a sub-class for Plaintiff's California law claims. The Court should grant transfer accordingly.

## II. TRANSFER UNDER 28 U.S.C. § 1404 IS ALSO WARRANTED

Even if the Court declines to adhere to the first-to-file rule, traditional section 1404 analysis also favors transfer to another district where the action could have been brought, and where the convenience of the parties and witnesses, and the interests of justice weigh in favor of transfer.

### A. This Action Could Have Been Brought in the Eastern District of New York

Here, the present action could have been brought in the Eastern District of New York. Plaintiff asserts subject matter jurisdiction in the Central District of California is proper under 28 U.S.C. section 1332(d)(2) because the "proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million." (Compl. ¶ 6.) Under section 1332(d)(2), which gives all United States district

courts subject matter jurisdiction over class actions where the amount in controversy is over $5 million and there is minimal diversity, the Eastern District of New York also has subject matter jurisdiction over this action. Further, venue is proper under 28 U.S.C. section 1391(b) because Defendant is headquartered in Sea Cliff, New York in the Eastern District of New York.

> **B. The Convenience of the Parties and Witnesses and the Interests of Justice Weigh in Favor of Transfer**

In determining whether transfer is appropriate under section 1404(a), courts weigh numerous factors, including: (1) the location where the relevant agreements or alleged events in the lawsuit took place; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum, and the relation of those contacts to the plaintiff's cause of action; (5) the difference in cost of litigation in the two forums; (6) the availability of compulsory process to compel attendance of non-party witnesses; and (7) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000); *George v. Nat'l Collegiate Athletic Ass'n*, C 08-03401 GAF, 2008 WL5422882, at *3 (S.D. Cal. Dec. 17, 2008) (transferring, in the interests of convenience and justice, putative class action from this district to the Southern District of Indiana).

The chosen forum of a named plaintiff in a putative class action is given even less weight than that of a typical plaintiff. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). "[B]ecause this case is a class action, the usual reasons for deferring to a plaintiff's choice of forum do not apply." *In re Yahoo! Inc.*, 2008 WL 707405, at *6 (C.D. Cal. Mar. 10, 2008) (citing *Koster v.(Am.) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.").)

Nor is Defendant's "natural" labeling in any way tied to the Central District of California. Defendant is a New York entity, with its headquarters in New York. (Hagey Decl. ¶ 3.) Labeling decisions historically were made in New York. (*Id.* at ¶ 14.) The fact that Plaintiff may have been

misled when she purchased a product in California, or viewed Defendant's website while in California, is irrelevant to the actual dispute, *i.e.*, whether GMs are "natural".

The other convenience of parties factors also weigh in favor of transfer. Defendant is already defending two identical suits in the Eastern District of New York. (*Id.*) Transfer to that district would prevent Defendant from having to defend three simultaneous litigations on the same issues on opposite sides of the country. Moreover, Ms. DiSimone's involvement in this action is likely to be minimal, if not non-existent. Litigation in the same forum would promote efficient adjudication of the case by eliminating duplicitous coordination of evidence and witnesses, and allowing for coordinated discovery and motion practice. Judge Rogers found the same to be true.

> Significant judicial efficiency will be gained and conservation of resources achieved by having one court manage the discovery in both actions, particularly where the primary defendant is located in New York. Moreover, both actions are nearing the motion to dismiss stage. In *Hill*, a motion to dismiss has been filed. In the *Valasquez* Action, leave has been granted to file a motion to dismiss.

(Transfer Order at *5.)

Transfer of this action to the Eastern District of New York would also allow the court there to exercise its discretion under Fed. R. Civ. Proc. 42(a) to consolidate these claims. (*Id.*) Class action consolidation was one of Congress's primary goals in enacting CAFA, S. Rep. No. 109-14, at 5 (2005), and the Ninth Circuit has held "consolidation is a significant factor in the transfer decision . . . because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A.J. Industries, Inc. v. U.S. Dist. Court for Central Dist. of California*, 503 F.2d 384, 389 (9th Cir. 1974) (affirming Central District of California order granting transfer). As such, this factor also weighs heavily in favor of transfer.

Moreover, and as already mentioned, Defendant has been headquartered in the Eastern District of New York, a fact that weighs strongly in favor of transfer. (Hagey Decl. ¶ 3.) Because Defendant is headquartered in the Eastern District of New York, the vast majority of the documents and other evidence relevant to this action are already located in the Eastern District of New York, and the majority of Defendant's employees who are engaged in the marketing of Defendant's

products and may be called as witnesses are already located in the Eastern District of New York. (*Id.* at ¶ 14.) As the *Hill* Court noted:

> Because of the overlapping claims, Products, and class period, discovery in the actions will be duplicative. Significant judicial efficiency will be gained and conservation of resources achieved by having one court manage the discovery in both actions, particularly where the primary defendant is located in New York.

(Transfer Order at *5.)

Further, any witnesses not already located in the Eastern District of New York will have to travel there in conjunction with the First-Filed Lawsuit and *Hill*, and, if this action is not transferred, will also have to travel to the Central District of California, clear across the country. Here, this factor weighs in favor of transfer because first, Defendant's employees and the evidence are already located in New York, and second, any remaining witnesses are already traveling to the Eastern District of New York to take part in the First-Filed Lawsuit. (Hagey Decl. ¶ 14); *see also* (Transfer Order at *5 (quoted above).)

The Supreme Court has held that the "interests of justice" encompass "those public-interest factors of systematic integrity and fairness." *Stewart*, 487 U.S. at 30. These concerns are especially present here. There is a risk of conflicting rulings and the same concerns regarding judicial efficiency. The defenses in both cases are identical, creating the possibility of inconsistent rulings by two federal courts on the same issues. Plaintiffs in both cases seek injunctive relief, and conflicting rulings would put Defendant in an impossible situation where it could not fully comply with either.

Additionally, transfer to the Eastern District of New York would promote judicial efficiency. (*See* Transfer Order at *5 ("Significant judicial efficiency will be gained and conservation of resources achieved by having one court manage the discovery in both actions, particularly where the primary defendant is located in New York.") Such efficiency is driven by the fact that the two pending New York cases and this one all involve the same Defendant, substantially the same products, and substantially the same issues and claims. Discovery and case management will be able to take place before a single District Judge, rather than in piecemeal application in various courts at various points in time. In this way, transfer and consolidation will

conserve court resources and avoid duplicative judicial review of the same evidence and arguments, *viz*, meaning there is a substantial and inherent judicial interest in favor of transfer.

## CONCLUSION

For the foregoing reasons, Plaintiff's action should be transferred to the Eastern District of New York pursuant to the first-filed rule and/or 28 U.S.C. § 1404(a).

Dated: August 23, 2013

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By: /s
     J. Noah Hagey

Attorneys for Defendant
Robert's American Gourmet Food, LLC